IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
ELRICK HARRIS,               )
                             )
     Plaintiff,              )
                             )      CIVIL ACTION NO.
     v.                      )       2:19cv919-MHT
                             )           (WO)
HYUNDAI MOTOR                )
MANUFACTURING ALABAMA,       )
LLC,                         )
                             )
     Defendant.              )
```

OPINION

In March 2019, plaintiff Elrick Harris was
terminated from his position as a track driver with
defendant Hyundai Motor Manufacturing Alabama, LLC. He
brought suit, asserting he had been subject to
discrimination and retaliation by the company. Harris
alleges eight separate counts: age discrimination in
violation of the Age Discrimination in Employment Act
(ADEA), 29 U.S.C. § 621 et seq.; disparate treatment on
the basis of race in violation of Title VII of the
Civil Rights Act of 1964, as amended, 42 U.S.C.
§§ 1981a and 2000e through 2000e-17; retaliation in

violation of Title VII; discrimination on the basis of race in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981; retaliation in violation of § 1981; interference with his benefits under the Family and Medical Leave Act (FMLA) of 1993, 29 U.S.C. § 2601 et seq.; retaliation under the FMLA; and intentional infliction of emotional distress (also known as the tort of outrage) under Alabama law.  Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 1367 (supplemental).

Hyundai has filed a motion for summary judgment, arguing that Harris was fired for falsifying documents and that there was no consideration of his race, his age, or his use of FMLA leave in the decision to terminate him.  For the reasons below, the court will grant this motion as to each of the eight counts in the complaint.

## I.   SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine factual dispute exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "conclusory assertions," without admissible supporting evidence, "are insufficient to withstand summary judgment." *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997), *abrogated on other grounds by Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019) (en banc). In general, summary judgment is appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587.

3

Summary judgment "applies in job discrimination cases just as in other cases.  No thumb is to be placed on the scale."  *Chapman v. AI Transport*, 229 F.3d 1012, 1026 (11th Cir. 2000) (en banc).


## II.  BACKGROUND

The parties agree on the general facts relevant to this case.

Harris is a black man in his 60s.  He was hired by Hyundai in 2005 and worked at the company's Montgomery, Alabama facility.  At the time of his termination, he worked as a "track driver," testing newly produced cars to ensure that they functioned properly.  Hyundai assigns a certain point value to different tests a track driver performs on a car, and the drivers are required to record which cars they tested and the number of points they received on a track card.  These track cards are then provided to the company.

**4**

Harris details numerous issues he had with his previous supervisor, Rocky Long. He alleges that these stem from his participation in the company's internal investigation of a racial discrimination claim against Long brought by one of his coworkers, Pamela Bryant. After Harris participated in the investigation, he says, Long began criticizing and harassing him, including making comments about his race. Long ultimately moved to another position within the company in which he no longer supervised Harris.

In 2018, Harris's new supervisor, Patrick Elliott, found a discrepancy in Harris's track cards. He determined that Harris had claimed the same number of points for running the same tests on the same car as another employee, which he found unlikely because the car had only been tested one time. After discovering this inconsistency, Elliott reviewed several of Harris's other track cards and found several other instances of point-counting he found to be

questionable.    He  also  reviewed  the  track  cards  for
other  employees  on  his  shift  and  found  no  other
instances  of  employees  claiming  points  for  tests  they
had  not  run.   Elliott  provided  this  information  to  his
supervisor,  who  forwarded  it  to  Team  Relations,  the
division  within  Hyundai  responsible  for  investigations
into  employee  misconduct.

    Team    Relations    employees    investigated    the
allegation  and  produced  a  memorandum  summarizing  what
they  found.   They  provided  this  memorandum  to  the
Employee  Review  Committee,  which  reviews  and  discusses
the  findings  of  an  investigation,  and  to  Human
Resources  Manager  Scott  Gordy,  who  was  responsible  for
making  the  ultimate  decision  about  whether  or  not  to
discharge  an  employee.   Relying  exclusively  on  the
memorandum  produced  by  Team  Relations,  Gordy  concluded
that  Harris  had  deliberately  falsified  his  track  cards
several  times  over  a  period  of  months  and  decided  to
terminate  him.   Harris  was  notified  by  letter  of  his

termination in March 2018.  He filed a charge of age
and race discrimination with the Equal Employment
Opportunity Commission, or EEOC, in March 2019, within
a year of his termination, and he received a dismissal
and notice of rights in August 2019.

### III.  DISCUSSION

#### A. ADEA Claim

The Age Discrimination in Employment Act prohibits
employers from discriminating against any individual
with regard to the terms, conditions, or privileges of
employment because of his age.  *See* 29 U.S.C.
§ 623(a)(1).  Any individual over the age of 40 is a
member of the class protected under the ADEA.  *See id.*
at § 631(a).

When an age-discrimination claim is based on
circumstantial evidence,[1] as Harris's is, the *McDonnell*

---

1.  The Eleventh Circuit defines "circumstantial
evidence" as evidence that "suggests, but does not
prove, a discriminatory motive." *Fernandez v. Trees,
Inc.*, 961 F.3d 1148, 1156 (11th Cir. 2020) (internal

*Douglas* analysis applies. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this approach, the employee bears the initial burden of establishing a prima-facie case of unlawful employment discrimination by a preponderance of the evidence. *Id*. at 802. One way the employee may establish a prima-facie case under the ADEA is "by showing that he (1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual." *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000). If his position was eliminated entirely or not filled, he may alternatively establish his prima-facie case by showing that he was in the protected age group and was adversely affected by an employment action and then providing "evidence by which a fact finder could reasonably conclude that the

_____

quotation marks omitted). "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Id.* (cleaned up).

employer intended to discriminate on the basis of age."
*Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1344
(11th Cir. 2003).

Once the employee establishes his case, the burden
shifts to the employer to rebut the presumption by
articulating legitimate, non-discriminatory reasons for
the employment action. *See Chapman*, 229 F.3d at 1024.
The employer bears only a burden of production, not
persuasion; it need not convince the court that it was
actually motivated by the reason advanced. *See Sims v.
MVM, Inc.*, 704 F.3d 1327, 1332-33 (11th Cir. 2013).

If the employer can satisfy this burden of
production, "the presumption of discrimination is
eliminated and the plaintiff has the opportunity to
come forward with evidence, including the previously
produced evidence establishing the prima facie case,
sufficient to permit a reasonable factfinder to
conclude that the reasons given by the employer were
not the real reasons for the adverse employment

decision." *Chapman*, 229 F.3d at 1024 (internal quotation marks omitted). Provided that the reason provided by the employer is "one that might motivate a reasonable employer," the employee must "meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Id*. at 1030. Instead, he must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (internal quotation marks omitted). If the employee does not provide sufficient evidence to rebut the employer's reasons, the employer is entitled to summary judgment. *See Chapman*, 229 F.3d at 1024-25.

Since Harris is in his 60s, he is indisputably a member of the protected age group. The parties also

agree that he was terminated, which would constitute an adverse-employment action.[2]  Because no one was hired to replace him after his termination, Harris presents essentially the same evidence to establish discrimination on the basis of age as part of his prima-facie case and to demonstrate that Hyundai's reasoning is pretextual.  Even assuming that he met his burden and established his prima-facie case, however, it is clear that Harris has failed to rebut the legitimate, nondiscriminatory reason that Hyundai provided to explain his termination.

Hyundai maintains that Harris was terminated solely because the company concluded that he falsified his

---

2.  While there is some discussion in the record about promotion opportunities or overtime that Harris contends to have been denied, the only adverse-employment action he references in his response to the motion for summary judgment is his termination.  *See* Pl.'s Opposition to Def.'s Mot. for Summary Judgment (Doc. 75) at 24.  As a result, that is the only adverse-employment action the court will consider.  In any event, Harris does not rebut Hyundai's evidence that he was not denied any promotion opportunities or overtime, so there is no reason to believe that he faced any adverse-employment actions in the relevant time period except for his termination.

track records and tried to claim points for tests he had not performed.  Harris argues that this reason is pretextual, criticizing the company's investigation into the accusation and maintaining that he never intentionally did anything wrong.  Even if it were true that the investigation was insufficient or even wrong, however, that would not demonstrate that Hyundai engaged in discrimination or that its reasoning was pretextual.  In determining whether an employer has properly terminated an employee, "the question is not whether the employee actually engaged in the conduct, but instead whether the employer in good faith believed that the employee had done so." *Gogel v. Kia Motors Mfg. of Ga.*, 967 F.3d 1121, 1148 (11th Cir. 2020).  "An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory or retaliatory reason." *Id*. (cleaned up).  As this court has made clear, its concern is

"ferreting out employment actions taken for discriminatory reasons"--it is not, and cannot act as, "a super-personnel department that referees, or second-guesses, an employer's handling" of its employees. *Penn v. Dep't of Corr.*, 411 F. Supp. 2d 1326, 1335 (M.D. Ala. 2005) (Thompson, J.).

Harris does not contest that Gordy alone made the decision to terminate him, nor does he contest that Gordy relied entirely on the prepared summary of the investigation, which suggested that he was guilty of falsifying his track sheets, in making that decision. Indeed, Harris objects at length that Gordy failed to consider the full file materials or to speak to him directly. It may be true that the company's investigation and Gordy's decision-making were not as thorough or fair as they could have been. But Harris fails to provide sufficient evidence that they were so deficient that a reasonable factfinder could conclude that they were *pretextual* or that there was any

discriminatory motive underlying them. *See Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000) ("A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by [a discriminatory reason].").

Conclusory statements that the investigation could only have been so poorly done if it were pretextual are not enough. To show that the company's reasoning is pretextual, Harris must either "persuad[e] the court that a discriminatory reason more likely motivated the employer" or "show[] that the employer's proffered explanation is unworthy of credence." *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (internal quotation marks omitted). It may be true that, as Harris contends, the point system is complicated and constantly changing, that track drivers are frequently confused by them, and that any mistakes he made were blameless errors. However, Hyundai has provided extensive evidence that Gordy relied on the

information provided in the investigation report and determined in good faith that Harris had engaged in serious misconduct. All those involved in the decision to terminate Harris affirm that they did not consider his age, and Harris does not point to any specific evidence that led him to believe there was a link between his age and his termination. Because the uncontroverted evidence on the record demonstrates that Hyundai's decision to terminate Harris--erroneous or not--was based exclusively on its investigation, with no consideration of his age, summary judgment must be granted to the company on the ADEA claim. *See Thomas v. Dolgencorp, LLC*, 645 F. App'x 948, 952 (11th Cir. 2016) (holding that an employee's denial of the accusation against her is "immaterial" if "the evidence shows that [her employer] conducted an investigation that yielded evidence upon which [it] had a reasonable good-faith basis to believe that [the employee] had falsified records").[3]

---

3. While unpublished opinions are not controlling

### B. Title VII and § 1981 Claims

Harris raises race discrimination claims under both Title VII and § 1981. "When § 1981 is used as a basis for relief parallel to that provided by Title VII, the elements of a § 1981 claim are identical to the elements of a Title VII claim." *Walters v. City of Atlanta*, 803 F.2d 1135, 1143 n.5 (11th Cir. 1986). Therefore, the court will consider these claims together/

### 1. Disparate Treatment on Account of Race

Harris argues that he was targeted for termination because of his race, while Hyundai maintains that its only consideration in deciding to terminate him was the company's finding that he falsified documents.

---

authority, they may be cited as persuasive authority to the extent that their legal analysis warrants. *See Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).

Circumstantial disparate-treatment claims under both Title VII and § 1981, like ADEA claims, are governed by the *McDonnell Douglas* framework. *See Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1060 (11th Cir. 1994). To make out a prima-facie case, the employee may show that "(1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997), *abrogated on other grounds by Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019) (en banc). Alternatively, the employee may present "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (internal quotation marks omitted). The burden then shifts to the employer to provide a legitimate,

17

nondiscriminatory reason for the adverse-employment action, and, if it provides such a reason, the employee has the opportunity to demonstrate that it is pretextual. *See McDonnell Douglas*, 411 U.S. at 802-04.

Harris has clearly met most of the requirements to establish a prima-facie case: it is undisputed that he is black and that he was terminated from his job, and his long tenure as a track driver with Hyundai is sufficient to establish that he was qualified to hold that position, *see Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1299 (11th Cir. 2015). However, Harris has provided neither evidence that similarly situated employees were treated more favorably nor a convincing 'mosaic' of other evidence of discrimination. Therefore, Hyundai is entitled to summary judgment on these claims.

Harris argues that other employees also engaged in lax record-keeping practices but that they were not even disciplined, let alone terminated. However,

18

Harris must demonstrate that he and his comparators are "similarly situated in all material respects." *Lewis*, 918 F.3d at 1224. "*Ordinarily*, for instance, a similarly situated comparator ... will have engaged in the same basic conduct (or misconduct) as the plaintiff ... ; ... will have been subject to the same employment policy, guideline, or rule as the plaintiff ... ; ... will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff ... ; and ... will share the plaintiff's employment or disciplinary history ...." *Id.* at 1227-1228 (emphasis added) (citations omitted). "In short, as its label indicates--'all material respects'--a valid comparison will turn not on formal labels, but rather on substantive likenesses."[4] *Id.* at 1228.

_____

4. Though Harris maintains that he never engaged in falsification, his actual guilt or innocence is not relevant here. The question is whether Hyundai treated everyone it found to have engaged in falsification similarly, not whether all of those individuals actually engaged in falsification. *See Nix v. WLCY*

While Harris argues that his colleagues frequently failed to maintain their track cards with exact accuracy, he does not mention anyone who engaged in falsification of records that was as serious or as extensive as what Hyundai determined he had done.  The inaccuracies Harris cites involve actions like missing a VIN number or writing it down incorrectly, writing down too few points, or forgetting to write down points.  He mentions no other employee who was found to claim points for work he did not do, as he was.  Nor does he offer any evidence to refute the results of Hyundai's internal investigation, which included audits of track cards from several different shifts and found no inconsistencies in anyone else's documentation. Without being able to point to another employee who engaged in the serious falsification of records, Harris can provide no meaningful comparator evidence.

---

*Radio/Rahall Communications*, 738 F.2d 1181, 1186 (11th Cir. 1984), *abrogated on other grounds by Lewis*, 918 F.3d.

Even assuming that this evidence would be enough to establish Harris's prima-facie case, however, the court concludes that he falls short of providing sufficient evidence to demonstrate that Hyundai's legitimate reason is pretextual, making summary judgment in favor of the company appropriate. As explained above, Harris has failed to show that there were white employees who engaged in conduct of "comparable seriousness" but were not fired. *McDonnell Douglas*, 411 U.S. at 804.

Harris relies on the argument that Hyundai's investigation into his track cards was shoddy. However, as discussed above, an employer is within its rights to fire an employee for any reason it wants, "as long as its action is not for a discriminatory or retaliatory reason." *Gogel*, 967 F.3d at 1148 (cleaned up). Harris points to no such reason motivating his termination. Instead, Gordy reiterated in both his deposition and his affidavit that his decision was based entirely on his good-faith finding that Harris

had engaged in serious misconduct by falsifying his track sheets. And there is not sufficient evidence from which a reasonable factfinder could conclude that the investigation was so shoddy as not to have been done in good faith.

There is evidence that Harris suffered discrimination based on his race during his employment at Hyundai--he recounts a number of racist comments made to and about him during his employment, and Hyundai's own internal investigation into Pamela Bryant's complaint found some evidence that black employees were treated differently from white ones. But there is no evidence to suggest that this discrimination formed the basis of, or played any part in, the company's decision to terminate him. None of the individuals whom he alleged harassed him were involved in the termination process. Gordy, the ultimate decisionmaker, could not even recall having ever met Harris. *See* Gordy Deposition (Doc. 76-2) at

22

20:17-18. Rather, the only reasonable conclusion from evidence on the record is that Harris was fired because Hyundai determined that he had falsified his track sheets, a purely non-discriminatory rationale. Hyundai is entitled to summary judgment on these claims.

### 2. Retaliation

Harris also argues that, in violation of Title VII and § 1981, he faced retaliation from Hyundai for opposing their unlawful employment practices. In particular, he contends that the company fired him because he provided evidence on behalf of Pamela Bryant in her race-discrimination complaint. Employers are prohibited by both Title VII and § 1981 from retaliating against any employee because of his participation or assistance in an investigation, hearing, or proceeding under those statutes. *See EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). Retaliation claims under Title VII and

§ 1981 that are based on circumstantial evidence are also governed by the *McDonnell Douglas* framework. *See Gogel*, 967 F.3d at 1134-35. To establish a prima-facie case of retaliation, an employee may show that "(1) she engaged in [a statutorily protected activity]; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

Once again, Harris presents identical evidence to establish the third prong of his prima-facie case as he does to demonstrate that Hyundai's reason for his termination is pretextual. As before, however, even if the court were to assume that he successfully established a prima-facie case, Harris does not rebut the legitimate, nondiscriminatory reason for his termination. The court has already explained in detail why the issue of the adequacy of Hyundai's investigation is insufficient for a reasonable

**24**

factfinder to find that the company's legitimate reason is pretextual.  Since Harris provides insufficient evidence that the company did not believe in good faith that he had fabricated documents when it terminated him, nor any other argument as to why that reason is pretextual, he has failed to meet his burden of persuasion.

Moreover, the length of time that passed between Harris's participation in the investigation of Pamela Bryant's complaint and his termination suggests that a retaliatory motive is unlikely.  An "employee may prove the causal connection by showing a close time-link between the adverse-employment action and the protected activity."  *Johnson v. Auburn Univ.*, 403 F. Supp. 2d 1101, 1113 (M.D. Ala. 2005) (Thompson, J.).  "The shorter the period between the two events, the stronger the inference that the adverse action was improperly motivated; conversely, a long period of time between the protected conduct and adverse-employment action

will negate an inference that the adverse action was caused by the protected expression." *Id*. at 1113-14.

Here, nearly *two years* passed between the time Harris provided evidence during Hyundai's investigation of Bryant's claim and the time Harris was terminated. The fact that the company took no adverse action against him for so long after he engaged in the protected activity makes it difficult to conclude that there was a causal relationship between the two. *See Gogel*, 967 F.3d at 1137 (finding no retaliation where 46 days had passed between the time the company became aware of the protected activity and termination); *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1092 (11th Cir. 2004) (finding that the protected activity and termination were "too remote to allow a reasonable inference of ... discrimination" where more than a year has passed), *abrogated on other grounds by Lewis*, 918 F.3d.  Harris provided no other evidence that his termination was based on or in any way related to his

participation in the Bryant investigation.  Therefore, the court will enter summary judgment for Hyundai.

## C. FMLA Claims

### 1. Interference

Under the Family and Medical Leave Act, eligible employees are entitled to take up to 12 weeks of leave during any 12-month period to care for their own health or the health of a close family member.  *See* 29 U.S.C. § 2612(a)(1).  Employers may not deny or otherwise interfere with employees' substantive rights under the Act.  *See id.* at § 2615(a)(1).

To state a claim of interference, an employee must "demonstrate by a preponderance of the evidence that he was entitled to the benefit denied."  *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1206-07 (11th Cir. 2001).  Harris argues that Hyundai interfered with his FLMA rights because it denied his final claim for leave.  It is true that Harris's claim

27

was ultimately denied because the company that handled Hyundai's FMLA claims did not finish its review until after Harris had been terminated. *See* Harris Deposition (Doc. 62-10) at 161:13-15 ("They waited until May and denied it after--I guess they contacted Hyundai, and Hyundai said I'm no longer working there."). But, while Harris was still employed with the company and his claim was still pending, he was allowed to take his requested time off and was treated as though he was on FMLA leave. *See id.* at 161:18-20. Thus, there was no interference with his rights or benefits under the Act in practice, even though the claim was formally denied, and Harris can demonstrate no interference. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (holding that the FMLA "provides no relief unless the employee has been prejudiced by the violation").

Harris also claims that Hyundai interfered with his leave by disciplining him for giving incorrect FLMA

28

notice, and points to a complaint he filed with the company arguing that his leave had been mishandled. However, Hyundai produced documents proving that Harris was never actually disciplined following the incident in question.  The results of the company's internal investigation at the time of Harris's complaint say the same, and Harris does not provide any evidence to refute this conclusion or demonstrate that he was ever prevented or discouraged from taking leave.

Nor does Harris's termination constitute interference.  It is true that an employee returning from FMLA leave generally has the right "to be restored by the employer to the position of employment held by the employee when the leave commenced."  29 U.S.C. § 2614(a)(1)(A).  This right, however, "is not absolute; an employer can deny restatement if it can demonstrate that it would have discharged the employee had he not been on FMLA leave."  *Martin v. Brevard Cty. Pub. Sch.*, 543 F.3d 1261, 1267 (11th Cir. 2008)

(internal quotation marks omitted). As discussed in detail above, there is insufficient evidence for a reasonable factfinder to conclude that Harris was terminated for any reason other than because he was falsifying his time sheets. Again, Harris provides no evidence to prove that this reason is pretextual. Therefore, Harris has failed to provide sufficient evidence of impermissible interference with his FMLA rights, and Hyundai is entitled to summary judgment on this claim.

## 2. Retaliation

Harris also argues that Hyundai retaliated against him for taking FMLA leave. To succeed on a retaliation claim, "an employee must show that his employer *intentionally* discriminated against him for exercising an FMLA right." *Martin*, 543 F.3d at 1287. An employee bringing a retaliation claim "faces the increased burden of showing that his employer's actions were

motivated    by    an    impermissible    retaliatory    or
discriminatory animus." *Id*. (internal quotation marks
omitted). Once again, the *McDonnell Douglas* framework
applies. *See id*. at 1268. The employee may show "(1)
that [he] engaged in statutorily protected expression;
(2) that [he] suffered an adverse employment action;
and (3) that there is some causal relation between the
two events." *McCann v. Tillman*, 526 F.3d 1370, 1375
(11th Cir. 2008).

As with his prior discrimination claims, even
assuming that Harris met his burden to establish a
prima-facie case, the court concludes that his
retaliation claim still fails at the pretext stage.
For all the reasons previously stated, Harris has
failed to provide sufficient evidence from which a
reasonable factfinder could conclude that Hyundai's
assertion that he falsified his track cards was not a
legitimate reason for his termination. As a result,

the company is entitled to summary judgment on this claim.

### D. Tort of Outrage Claim

Finally, Harris argues that during his employment with Hyundai he was subjected to intentional acts of harassment that created a hostile-working environment and caused him humiliation and trauma. This culminated, he argues, in the company's investigation into him, which was based on mere pretext and caused him stress and anxiety. According to Harris, this treatment was so extreme that it fell within the scope of the tort of outrage.

Hyundai maintains that Harris waived this claim as part of his worker's compensation settlement. They point to language in the agreement that it would be the "full and final settlement, compromise and satisfaction of any and all claims Plaintiff has or may have pursuant to the Alabama Worker's Compensation Act or

32

any other claim that could be made under Alabama law"
and that this waiver should be be "construed as broadly
as possible, to represent settlement of any
claims--reported or unreported--that have been brought
or could be brought under the Worker's Compensation Act
or any other Alabama law."   Worker's Compensation
Settlement Agreement/General Release (Doc. 62-10) at
153.   Harris does not dispute that he waived this
claim.   Even if the claim were not waived, however,
Harris's situation falls far short of extreme treatment
needed to establish the tort of outrage.

     The tort of outrage is an "extremely limited cause
of action" in Alabama.  *Potts v. Hayes*, 771 So. 2d 462,
465 (Ala. 2000).  Such a claim is viable only when the
conduct at issue is "so outrageous in character and so
extreme in degree as to go beyond all possible bounds
of decency, and to be regarded as atrocious and utterly
intolerable in a civilized society."   *Horne v. TGM
Assocs., L.P.*, 56 So. 3d 615, 630 (Ala. 2010).   The

tort has been particularly limited in the at-will employment context. The Alabama Supreme Court has held that an employee alleging outrage based upon termination must establish that the firing was contrary to public policy and was accompanied by the "sound of fury." *Wal-Mart Stores, Inc. v. Smitherman,* 872 So. 2d 833, 840 (Ala. 2003) (internal quotation marks omitted). Courts have frequently rejected outrage claims based merely on "accusations of threats and disparate treatment at work." *Palmer v. Infosys Techs. Ltd.*, 888 F. Supp. 2d 1248, 1254 (M.D. Ala. 2012) (Thompson, J.).

It is apparent that Hyundai's treatment of Harris does not rise to the dramatic level required for the tort of outrage to apply. At no point did Harris experience the sort of outrageous and extreme conduct required to support a tort-of-outrage claim, particularly given that courts have found that even far more dramatic conduct did not rise to the level of

34

outrage. *See, e.g.*, *id*. at 1255 (granting summary judgment on an outrage claim despite the plaintiff's allegation that he had been the target of ongoing harassment, including threatening late-night calls to his home phone). While Harris may have found his experience with Hyundai to be unpleasant or even traumatic, it was far from being "so extreme in degree as to go beyond all possible bounds of decency." *Potts*, 771 So. 2d at 465; *see also Carraway Methodist Health Sys. v. Wise*, 986 So. 2d 387, 402 (Ala. 2007) (explaining that while an individual may experience a "personal crisis" upon his termination, that is not sufficient to establish an outrage claim). Accordingly, summary judgment must be entered in favor of Hyundai on this claim.

An appropriate judgment in favor of Hyundai on all claims will be entered.

DONE, this the 16th day of June, 2021.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE